BURLINGTON DISTILLING COMPANY, PROSECUTOR, v. STATE BOARD OF ASSESSORS.

Argued February Term, 1914—Decided June Term, 1914.

The prosecutor, a manufacturing corporation, having stated in its annual return to the state board of assessors that it had not begun business yet, but that its factory was in process of erection, and it was not disputed that at least fifty per cent. of its capital stock was thereby invested here—*Held*, that it was thereby employed in business in New Jersey and was carrying on its business here, so as to come within the provisions of the Franchise Tax act.

On *certiorari.*

Before Justices GARRISON, TRENCHARD and MINTURN.

For the prosecutor, *Harrison H. Voorhees.*

For the defendant, *Edmund Wilson, Francis H. McGee* and *John W. Wescott.*

The opinion of the court was delivered by

MINTURN, J. This is a *certiorari* to review an assessment for taxes imposed upon the prosecutor for the year 1912.

The Burlington Distilling Company was incorporated under the laws of the State of New Jersey, on the 14th day of August, 1911, for the purpose of manufacturing denatured alcohol and its by-products, and immediately thereafter purchased land and began the erection and construction of a plant for the purpose of carrying out the objects of its incorporation.

The company sold its capital stock, and from the proceeds of the sale erected a plant, which was in the course of erection very soon after the incorporation of the company, in 1911, and down to the fall of 1913, when, according to the testimony, it began the acutal manufacture of denatured alcohol and its by-products.

During that time the company expended upwards of two hundred thousand dollars, in the erection and construction of its plant, all of which expenditure was derived from the sale of its stock. The testimony shows that no part of the capital of the company was used for any purpose other than the erection and construction of its plant and the necessary working capital to carry on its business.

The corporation made its report under the law on the form issued by the state board of assessors. It is the contention of that board that because paragraphs 9 and 10 of the report are not filled out or answered, the company is liable for an assessment upon the total amount of the capital stock authorized to be issued. It is also contended that a corporation is liable to taxation from the time of its incorporation until the process of manufacturing is actually begun in the state. The officers of the company in not answering paragraphs 9 and 10 of their report added, by way of explanation, the following: "Have not begun business yet. Factory in process of erection."

The act under which the tax is sought to be imposed is "An act providing for the imposition of state taxes upon certain corporations, and for the collection thereof," approved April 18th, 1884, as amended by *Pamph. L.* 1906, *p.* 31, and provides "that the act of assessing franchise taxes of this

nature shall not apply to manufacutring corporations, at least fifty per centum of whose capital stock issued and outstanding is invested in mining or manufacturing carried on in this state; and which mining or manufacturing corporation shall have stated in the annual return to the state board of assessors, where the manufacturing establishment of such corporation is located, the character of the goods manufactured, and the total amount of its capital stock embarked in the business of manufacturing and the amount of capital stock employed in New Jersey in carrying on such manufacturing business."

The question presented becomes one of legislative intent. *Taylor* v. *United States, 3 How. (U. S.)* 197; *Cliquots Champagne, 3 Wall. (U. S.)* 114.

Quite obviously, the legislative purpose manifested in this legislation was to encourage by liberal enactment the locating in this state of useful manufactures. From this point of view, the capital of the corporation is employed, in this state, when it is devoted in a *bona fide* endeavor to building the necessary plant for carrying on the business of manufacturing.

It would be manifestly unreasonable to assume that the legislature intended a corporation to carry on its manufacturing, without the construction of a plant in this state, as a necessary condition thereto. A legislative policy exhibiting such a liberal scheme of industrial encouragement should not receive a construction so narrow and illiberal as to subvert the very policy which quite obviously such legislation was intended to erect and subserve. *Black In.* 325.

The assessment under review will be set aside.